IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD ADAMS,  #292-169       *

     Plaintiff               *

     v.                   *   CIVIL ACTION NO. AMD-06-2549

MEDICAL DEPARTMENT      *

     Defendant            *

MEMORANDUM

Now pending is defendant's[1] unopposed motion to dismiss or in the alternative for summary judgment the pro se 42 U.S.C. § 1983 complaint filed by Ronald Adams, an inmate at the Maryland Correctional Training Center (MCTC).[2] Adams seeks injunctive relief and damages for defendant's alleged denial of medical treatment for his ophthalmic problems.[3] Defendant relies on materials outside of the complaint and the motion shall be construed pursuant to Fed R. Civ. P. 56.  No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004).  For the reasons set forth below, the court will grant defendant's motion for summary judgment, and enter judgment  in favor of defendant.

Background

The following facts presented in verified medical records filed by defendant are undisputed.

---

[1]Correctional Medical Services, Inc., (CMS) is the contractual medical provider at MCTC.

[2]Plaintiff was provided notice pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), but has not filed a reply.

[3]On October 6, 2006, the court directed counsel for the state to respond to a show cause order in view of plaintiff's allegations regarding his health. The response was timely filed and the court then directed defendant to answer the complaint. Papers Nos. 2, 6, 7 & 8.

Plaintiff has a history of nodular episcleritis of the right eye.[4] On January 20, 2006, plaintiff was examined in the Ophthalmology Clinic at the University of Maryland Medical Center (UMMC) for eye problems. The ophthalmologist noted that plaintiff had distichiasis of both lower lids.[5] The ophthalmologist increased plaintiff's dosage of the medication Dolobid and recommended surgery to remove the eyelashes.

Plaintiff complained that his episcleritis had not improved and he was examined again at UMMC. On February 14, 2006, the ophthalmologist performed a microdissection of the right lower lid to remove plaintiff's problem eyelashes. On March 15, 2006, a UMMC ophthalmologist examined plaintiff and recorded that he was healing as expected.   Plaintiff was to be scheduled for the microdissection procedure for his left lower eyelid.   On May 9, 2006, plaintiff  underwent surgery at UMMC for distichiasis of the left eye.   After he returned from UMMC, plaintiff stayed one night in the infirmary at the Maryland Correctional Center- Hagerstown for observation.  The following day, plaintiff returned to MCTC.

On May 28, 2006, plaintiff went to the Dispensary as a "walk-up" patient complaining of discomfort after he was hit in the left eye with a football.[6]  Medical personnel observed the left eye was discolored and tender to palpation, but not swollen.  No changes in plaintiff's visual acuity were

---

[4]Nodular episcleritis is a condition in which the eye suddenly becomes reddened and a nodule forms within the inflamed area. Most cases resolve spontaneously within two to three weeks, but in the event of discomfort, topical anti-inflammatory treatments may be used.  Ex. A. p. 2, n.1.

[5]Distichiasis, commonly referred to as entropian, is abnormal eyelash growth.  It causes the eyelash to touch the surface of the eye. Ex. A. p. 2, n. 2.

[6]An inmate is brought to the Dispensary as a "walk-up" patient for complaints or injuries that in the judgment of medical providers warrant more immediate attention than a scheduled appointment. According to defendant, "walk-up" status is "similar to being evaluated in the emergency department of a hospital.  Ex. A. p. 2, n. 3.

recorded.  Plaintiff was advised to refrain from working for three days and to avoid "play," *i.e.* sports and gym for 30 days. On June 21, 2006, plaintiff was examined by an ophthalmologist at UMMC The ophthalmologist observed that the surgery on plaintiff's left eye was successful. Additionally, he prescribed glasses for plaintiff.

Meanwhile, from May 27, 2006, until  September 10, 2006, plaintiff submitted several Sick Call Request/Encounter Forms and was evaluated by medical providers. Medical personnel in the Pulmonary Clinic also evaluated plaintiff for asthma during this time period. There is no record that plaintiff complained of eye pain.

On September 10, 2006, plaintiff submitted a Sick Call Request/Encounter Form complaining of eye pain resulting from being hit by a football four months prior.[7]  When asked why he had waited so long to alert the medical staff, plaintiff had no response. Plaintiff was  given Tylenol and advised to submit another Sick Call Request/ Encounter Form if there was no improvement in two weeks.

On September 28, 2006, plaintiff complained of lingering pain in his right eye, and was scheduled to see an optometrist.  Plaintiff also submitted a Sick Call Request/Encounter Form dated October 14, 2006, complaining of pain in his right eye. On October 26, 2006, plaintiff submitted another Sick Call Request/Encounter Form in which he stated that his right eye still hurt.  The nurse who examined plaintiff found his right eye was slightly irritated, and recommended using artificial tears four times daily. An optometrist evaluated plaintiff on October 28, 2006, and prescribed eye drops for him. Notably, the football injury was to plaintiff's left, not right eye.

In a Sick Call Request/Encounter Form dated November 9, 2006, plaintiff complained he still

---

[7]Plaintiff did not specify which eye caused him pain. The football injury was to his left eye.

had eye pain because the drops were not working. A nurse examined plaintiff, but found no acute

problems.   According to defendant, plaintiff has submitted no complaints since November 9, 2006.

Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56©. The Supreme Court has clarified that this does not mean that any

factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d

514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).   The court should

"view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her

favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia

Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).   The court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses

from proceeding to trial."   *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986)).

Analysis

-4-

As a preliminary matter, the court notes that principles of respondeat superior or vicarious liability do not apply to actions filed pursuant to 42 U.S.C. §1983. *See Monell v. Department of Social Services,* 436 U.S. 658, 691-94 (1978). Correctional Medical Services is a private corporation that has contracted with the State of Maryland to provide medical services to certain state institutions and administers medical care only through its agents and employees, and may not be held liable  based on respondeat superior given the facts alleged. Plaintiff proffers no evidence that  alleged deficiencies in medical care were based on corporate policy or pattern of practice.

In addition, plaintiff fails to demonstrate that he received constitutionally inadequate medical care.  To state a constitutional claim under the Eighth Amendment for denial of medical care, a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).

A health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms.  *See Johnson v. Quinones,* 145 F.3d 164, 168 (4th  Cir. 1998). Furthermore,  mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th  Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Generally, a  prisoner's disagreement with medical personnel over the course of his treatment does

1c63491eff

not constitute a constitutional cause of action.  *See Wright v. Collins*, 766 F. 2d 841, 849 (4th Cir.

1985).

The undisputed facts presented here show that plaintiff has failed to demonstrate how his

medical treatment amounted to deliberate indifference to his medical needs.  The record shows that

plaintiff was examined by an ophthalmologist, surgery was performed to correct his eye problems,

and follow-up exams were provided.  Additionally, an optometrist and other medical providers have

examined plaintiff for complaints of eye pain and prescribed medication and other treatment.  There

are no facts presented here to establish that defendant acted with deliberate indifference to plaintiff's

medical needs, or that the treatment he received amounted to constitutionally inadequate care.  In

sum, there is no cause to find constitutionally inadequate medical care.

Conclusion

For the reasons stated above, the court will grant summary judgment in favor of defendant.

An order follows.

Filed: May 24, 2007                          ____/s/_____
                                             Andre M. Davis
                                             United States District Judge